# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# NORTHERN DIVISION

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 2:11-CV-57 NAB |
| AUDRAIN HEALTH CARE, INC. | ) ) ) | |
| Defendant. | ) ) ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Plaintiff Equal Employment Opportunity Commission's ("EEOC") Motion for Partial Summary Judgment and Defendant Audrain Health Care, Inc.'s ("Audrain") Motion for Summary Judgment. [Docs. 18, 20]. The EEOC filed this action alleging that Audrain violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* and Title I of the Civil Rights Act of 1991, 42 U.S.C. § 1981a. Specifically, the EEOC alleges that Audrain discriminated against David Lunceford by refusing to transfer him to a vacant operating room nurse position because of his gender. Audrain asserts that it did not discriminate against Lunceford, because he did not apply for the vacant position.

The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Based on the following, the Court will grant Defendant's Motion for Summary Judgment and deny Plaintiff's Motion for Partial Summary Judgment.

**I.      Standard for Summary Judgment**

"It is familiar law that the function of the Court in passing upon a motion for summary judgment is simply to determine whether there exists in the case a genuine issue as to any

material fact which would render a trial necessary." *Young v. Southwestern Bell Telephone Co.*, 309 F.Supp. 475, 476 (E.D. Ark. 1969).  "Where as here, each side moves for summary judgment, each concedes that for purposes of his own motion there is no genuine factual issue; however, the fact that both sides move for summary judgment does not necessarily establish that the case is a proper one for summary disposition."  *Young*, 309 F.Supp. at 476.

Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment if all of the information before the court shows "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The initial burden is placed on the moving party. *City of Mt. Pleasant, Iowa v. Assoc. Elec. Co-op., Inc.*,838 F.2d 268, 273 (8th Cir. 1988 ) (the moving party has the burden of clearly establishing the non-existence of any genuine issue of fact that is material to a judgment in its favor).  Once this burden is discharged, if the record shows that no genuine dispute exists, the burden then shifts to the non-moving party who must set forth affirmative evidence and specific facts showing there is a genuine dispute on an issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  Once the burden shifts, the non-moving party may not rest on the allegations in its pleadings, but by affidavit and other evidence, he or she must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); *Herring v. Can. Life Assur. Co.*, 207 F.3d 1026, 1029 (8th Cir. 2000).  The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  A dispute about a material fact is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Herring*, 207 F.3d at 1029 quoting *Anderson*, 477 U.S. at 248.  A party resisting summary judgment has the burden to

designate the specific facts that create a triable controversy. *See Crossley v. Georgia-Pacific Corp.*, 355 F.3d 1112, 1114 (8th Cir. 2004). Self-serving, conclusory statements without support are not sufficient to defeat summary judgment. *Armour and Co., Inc. v. Inver Grove Heights*, 2 F.3d 276, 279 (8th Cir. 1993). In passing on a motion for summary judgment, it is not the court's role to decide the merits. The court should not weigh evidence or attempt to determine the truth of a matter. Rather, the court must simply determine whether a genuine issue of material fact exists. *Bassett v. City of Minneapolis*, 211 F.3d 1097, 1107 (8th Cir. 2000).

**II.     Factual Background**

The Court finds that the following facts are material and undisputed for purposes of the parties' motions for summary judgment in the light most favorable to the plaintiff. Audrain is a community-based medical center located in the City of Mexico, Missouri. David Lunceford has been employed as a registered nurse ("RN") at Audrain since February 2004 and is currently employed there. Prior to April 16, 2010, Lunceford worked as a nurse in the Critical Care Unit ("CCU") and Post Anesthesia Care Unit ("PACU"). In April 2010, Lunceford worked in the PACU. At that time, Lunceford's supervisor in the PACU was Linda Brooks, the Clinical Coordinator of the PACU, Operating Room ("OR"), and sterile processing departments. In Lunceford's performance evaluation just before April 2010, Brooks rated his job performance as "Exceeds Expectations."

On March 10, 2010, Audrain posted a job vacancy for a RN position in the OR as a replacement for Nancy Garrett. On March 18, 2010, Audrain posted a job vacancy for a RN in the CCU. Audrain maintains a policy that allows its nurses to transfer between nursing units. When a nursing department has a vacancy, the director of the nursing department having the need completes a Personnel Requisition form. The form is first routed through Executive Staff

3

for approval and then routed to the Human Resources Department.  Human Resources personnel then process the Personnel Requisition and post the vacancy within the hospital so that current employees may apply for a transfer to the vacant position.  Pursuant to the transfer policy, an employee must be in his or her current position for a minimum of six months to qualify for a transfer, unless reason exists where the affected department directors mutually agree that a transfer can occur earlier.  The purpose of the transfers policy's six-month minimum requirement is to minimize the need to train and re-train employees who transfer between departments and allow transferring employees to become acclimated to a department before transferring somewhere else.

The transfer policy requires employees interested in a transfer from one department to another to complete a "Request to Transfer" form.  Employees are not to contact the department where the vacancy exists regarding a potential transfer.  Employees cannot be considered for an exception to the transfer policy without first completing a Request for Transfer.  Upon receipt of a Request to Transfer, the Human Resources Department conducts an initial review of the request to determine whether the employee is eligible to transfer.  This review includes ensuring the employee meets the transfer policy eligibility requirements; reviewing the employee's personnel file to ensure no relevant performance concerns exist; and ensuring that the job transfer is within the same job categorization to verify that the employee meets the new job's qualification requirements.  If an employee wants to apply for more than one posted position at the same time, the employee must complete a separate Request for Transfer form for each vacancy.  After the initial screening and approval by Human Resources, a Personnel Action form is routed to the relevant department directors and a member of the Executive Administration for approval of the transfer.  Upon Executive Administration approval of the Personnel Action form,

the transfer is deemed effective for administrative purposes. The employee's actual transfer may not occur for up to thirty (30) days after the approval so that the department from where the employee is transferring can assess the need for a replacement and fill any vacancy caused by an employee's transfer. Once administrative approval of a transfer occurs, the transferring employee is not eligible to transfer to any other job vacancy within the hospital except as provided in the transfer policy. The purpose of that prohibition is to minimize disruption to the operation of the affected units, including preventing the need to post the same vacancy multiple times. Since January 1, 2009, Audrain has made exceptions for five employees who had been in their current positions less than six months. None of the employees granted an exception to the no-transfer policy transferred to a specialized unit such as psychiatry or the OR without having prior experience in those units.

On March 22, 2010, Lunceford completed a "Request for Transfer" form requesting transfer from his current position in the PACU to the vacant position in the CCU. In his Request for Transfer, Lunceford noted that most of his experience at Audrain was in the CCU. On the same day, Lunceford's "Request for Transfer" form was accepted and preliminarily approved by Human Resources by Director of Inpatient Services Penny Westfall. On March 26, 2010, Brooks approved the transfer and then Lunceford's transfer request was approved by Audrain CEO David Neuendorf on March 30, 2010. Lunceford was scheduled to begin his duties to the CCU nurse position on April 22, 2010.

Lunceford never completed a Request for Transfer form for the OR nursing position. The OR nursing unit requires specialized specific job knowledge. In April 2010, Lunceford had no experience as an OR nurse and was not qualified to be assigned to the OR without further training. Lunceford's experience in the CCU and the PACU did not qualify him as having

5

experience or familiarity with OR nursing.  On March 25, 2010, a female nurse employed in the psychiatric unit requested transfer to the vacant OR nurse position, but she was not considered for the position, because she had no OR nursing experience.  There were no other applications or requests for transfer regarding the OR nursing position.  On April 16, 2010, Lunceford asked Brooks if she was willing to train him or consider him for the still vacant OR nurse position.  Brooks told Lunceford that she wanted to fill the position with a woman, because she had concerns about having the right mix of patients to staff based on gender.  After the conversation with Brooks, Lunceford met with Kari Wilson, Audrain's Vice-President of Clinical Services and Chief Nursing Officer and Christy Smiley, Audrain's Director of Human Resources about Brooks' remark that she wanted to hire a woman for the position.  At his meeting with Wilson, Lunceford told Wilson that he did not want to work for Brooks and was not interested in the OR position.  Smiley stated that during her meeting with Lunceford, she did not believe that he was expressing an interest in the OR position and she believed that he was merely advising her that he was upset about the conversation with Brooks.  The vacant OR nurse position was eventually filled in July 2010 by the same experienced OR nurse who had vacated the position, Nancy Garrett.

    Audrain has an Equal Employment and Care Policy (Non-discrimination Policy) that states "it shall not fail to hire, discharge, or discriminate among applicants for employment or employees in terms of compensation, terms, conditions, and privileges of employment because of race, color, religion, national origin, sex, disability status, persons 40 or over years of age, or Vietnam-era veterans."

    Audrain maintains a Patient Rights and Responsibilities Policy, which applies to all aspects of health services offered at Audrain.  As a hospital receiving payment for services to

Medicare patients, Audrain is subject to federal regulations regarding its participation. The relevant Medicare regulations require Audrain to maintain a patient rights policy that provides for the following: the patient's participation in their plan of care; the maintenance of the patient's privacy and safety; respect for the patient's dignity and comfort; and protection of the patient's physical and emotional health and safety. The Medicare regulations also require that Audrain maintain adequate staff, including nursing staff, to provide appropriate patient care. Audrain is also seeking accreditation through the Joint Commission on Hospital Accreditation, which requires hospitals to respect patients' cultural and personal values, beliefs, and preferences.

Pursuant to the Patient Rights policy, an Audrain patient has the right to have a health care provider of the same gender in the room during treatment.[1] The purpose of having a female health care provider in the room for the examination of a female patient is in part to alleviate the patient's concern and anxiety about being alone with or exposed to a male health care provider in an uncomfortable manner. Audrain makes every effort to have a female nurse present for surgical procedures on female patients if the patient so requests. Informally, Audrain had a practice of attempting to provide a female chaperone or staff member to assist with procedures performed on anesthetized female patients, whether it was requested by the patient or not. Brooks testified that due to the overlap of procedures and the scheduling of surgeries throughout the day, hiring Lunceford for the OR Nurse position would have made it difficult to staff female surgical cases with a female RN. However, Brooks never performed an assessment of how her staff coverage goals would be impacted by hiring a male OR nurse for the vacant position.

---

[1] The policy specifically states "It is the patient's right within the law to personal information privacy as manifested in the following rights . . . To be interviewed and examined in surroundings designed to assure reasonable, visual, and auditory privacy. This includes the right to have a person of one's own sex present during certain parts of a physical examination, treatment, or procedure performed by health professionals and the right not to remain disrobed any longer than is required for accomplishing the medical purpose for which the patient is asked to disrobe."

Lunceford agrees that it is a legitimate health care issue to accommodate a female patient's request to have someone of the same gender in the room during treatment by a male health care provider and that the Patient Rights policy applies to patients undergoing surgery.

### III.  Parties' Motions for Summary Judgment

The EEOC asserts that there is direct evidence of sex discrimination against Lunceford based on Brooks' comments and Audrain cannot prove it would have made the same hiring decision if it had not inappropriately considered gender or that sex is a bona fide occupational ("BFOQ") for the OR nurse position.  Audrain contends that there is no direct evidence of discrimination, because the EEOC cannot establish that even if Brooks' comment was biased, there is no causal link between her comment and any employment action by Audrain.  Further, Audrain states that the EEOC also cannot establish a prima facie case of discrimination, because Lunceford did not apply for the vacant position, was not qualified for the position, and was not eligible to transfer into the position.  The Court will address each argument in turn.

#### A.    Direct Evidence Analysis

Title VII prohibits employers from failing or refusing to hire, discharging or otherwise discriminating against any individual with respect to compensation, terms, conditions, or privileges of employment based on sex.  42 U.S.C. § 2000e-2(a)(1).  "The employee may produce direct evidence of discrimination, which is evidence showing a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder than an illegitimate criterion actually motivated the adverse employment action."  *McCullough v. University of Arkansas for Medical Sciences*, 559 F.3d 855, 860 (8th Cir. 2009).  "Direct evidence provides a strong causal link between the alleged discriminatory bias

and the adverse employment decision." *Id.* at 861.  "It most often comprises remarks by decisionmakers that reflect without inference, a discriminatory bias." *Id.*

It cannot be disputed that Brooks' remark that she wanted to hire a woman for the position indicates a discriminatory bias to hire a woman for the OR nurse position instead of a man.  It is also undisputed that this remark involved a decisionmaker discussing the vacant job at issue.  None of the EEOC's proof, however, establishes a direct link between the decision to hire someone else for the vacant OR nurse position and Brooks' remark.  *McCullough*, 559 F.3d at 861.  Lunceford and Brooks agree that he asked her if she would train or consider him for the OR nurse vacancy.  Both agree that Brooks told him that she wanted to fill the position with a woman, because she was concerned about having the right mix of patients and staff based on gender.  It is undisputed that Lunceford never completed a Request for Transfer form regarding the vacant OR nurse position.  Therefore, there is no adverse employment decision as Audrain never made a decision to deny Lunceford the OR nurse vacancy.

### B.    McDonnell Douglas Burden-Shifting Analysis

> If an employee lacks direct evidence of discrimination, he can survive summary judgment by showing a genuine dispute for trial under the burden shifting framework established in *McDonnell Douglas Corp. v. Green*.[2]  Under *McDonnell Douglas*, the plaintiff must first establish a prima facie case of discrimination.  If the plaintiff establishes a prima facie case, then the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory reason for the [employment action].  If the employer meets this burden, then the employee must show that the employer's proffered reason for [not hiring him] is a pretext for unlawful discrimination.  At the summary judgment stage, under the 1991 amendments to Title VII, the issue is whether the plaintiff has sufficient evidence that unlawful discrimination was a motivating factor in the defendant's adverse employment action.  If so, then the presence of additional legitimate motives will not entitle the defendant to summary judgment.

---

[2] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-805.

*McCullough*, 559 F.3d at 860 (internal citations omitted).  To establish a prima facie case of discriminatory failure to hire, the EEOC must prove (1) Lunceford is a member of a protected class; (2) he applied and was qualified for a job for which Audrain was seeking applicants; (3) he was rejected; and (4) after he was rejected Audrain continued to seek applicants with Lunceford's qualifications.  *Harrison v. United Auto Group*, 492 F.3d 972, 974 (8th Cir. 2007).

In this case, the EEOC cannot establish a prima facie case.  First, Lunceford did not apply for the vacant OR nurse position.  Audrain could not hire Lunceford for a job that he did not apply for.  *See e.g., McClure v. Career Sys. Dev. Corp.*, 447 F.3d 1133, 1136 (8th Cir. 2006) (plaintiff fails to make prima facie case because he failed to apply for position); *Sherpell v. Humnoke Sch. Dist. No. 5 of Lonoke County, Arkansas*, 874 F.2d 536, 539 (8th Cir. 1989) (same).

The EEOC contends that Lunceford was excused from applying for the position because he took "extraordinary" steps to express his interest in the position to Audrain.  "[I]n cases where the very discrimination alleged would have made it futile for the plaintiff to apply for the position in question, the plaintiff's failure to apply may be excused if [he] can show that in the absence of such discrimination [he] would have applied."  *Culpepper v. Vilsak*, 664 F.3d 252, 256-57 (8th Cir. 2011).  "Failure to formally apply for a position does not bar a plaintiff from establishing a prima facie case, as long as the plaintiff made every reasonable effort to convey [his] interest in the job to the employer."  *Jackson v. United Parcel Service*, 643 F.3d 1081, 1086 (8th Cir. 2011).  Based on the record viewed in the light most favorable to Lunceford, the Court cannot conclude that Lunceford made every reasonable effort to convey his interest in the job, let alone took extraordinary measures to do so.  Lunceford had a single conversation with Brooks about transferring to the OR nurse position.  After Brooks told him that she was looking to hire a woman, it is undisputed that he complained about Brooks' comment to Smiley and Wilson.  It is

also not disputed that when he spoke to Wilson, he told her that he no longer wanted to work with Brooks and that included working for her in the vacant OR position.  Because Lunceford did not apply for the OR position and then conveyed to Wilson he no longer wanted to apply for the position, he did not make every reasonable effort to convey his interest in the position.  Also, because Lunceford failed to apply for the position, Audrain did not "reject" his application for hire.

Further, Lunceford was not qualified or eligible to apply for the OR nurse position.  It is undisputed that Lunceford had already applied for transfer to the vacant position in the CCU and was awarded the position on March 30, 2010.  He asked about the vacant OR position in April 2010.  Audrain's transfer policy does not allow employees to transfer to a new position if they have been in their current position for less than six months.  The only exception to the six month rule is if the directors of the two departments involved mutually agree to waive the rule.  The EEOC contends that the six month rule would not have applied to Lunceford as he still worked in the PACU when he spoke to Brooks and therefore his two year tenure there would apply.  The Court disagrees.  The EEOC does not dispute that the transfer is deemed effective for administrative purposes upon Executive Administration approval of the Personnel Action form. Also, Lunceford spoke with Brooks at a minimum four days and at the most six days prior to the start of his new job in the CCU, which was April 22, 2010.  If Lunceford had applied for the OR nurse position even on the date he spoke with Brooks, he would have been working in the CCU at the time that his application was under consideration, thereby placing him within the six month limit on transfers.  If Lunceford had completed a Request for Transfer form for the OR position between March 30, 2010 and July 2010, Human Resources would have determined that he was not eligible for transfer pursuant to the transfer policy.  Moreover, Lunceford cannot

11

show that he would have received a waiver to transfer from the CCU to the OR, because Lunceford lacked any experience as an OR nurse and the evidence shows that all of the employees who received transfer waivers to the OR had prior experience working in the OR. Therefore, the Court finds that Lunceford has failed to make a prima facie case under *McDonnell Douglas*.

## IV. Conclusion

Based on the foregoing, the Court will grant Defendant's Motion for Summary Judgment and deny Plaintiff's Motion for Partial Summary Judgment on liability.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment is **GRANTED**. [Doc. 18].

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Partial Summary Judgment is **DENIED**. [Doc. 20].

A separate Judgment will accompany this Memorandum and Order.

Dated this 28th day of January, 2013.

                                            /s/ Nannette A. Baker
                                            NANNETTE A. BAKER
                                            UNITED STATES MAGISTRATE JUDGE